UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Stanley Wisell

   v.                                 Civil No. 17-cv-227-LM
                                      Opinion No. 2018 DNH 033
Nancy A. Berryhill, Acting
Commissioner of Social Security

**O R D E R**

Stanley Wisell seeks review of a final decision of the Acting Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI"). The Administrative Law Judge ("ALJ") found that Wisell was not disabled because he could perform a significant number of jobs in the national economy. For the reasons that follow, the decision of the Acting Commissioner, as announced by the ALJ, is reversed.

**STANDARD OF REVIEW**

The court must uphold the Commissioner's findings when they are supported by substantial evidence and the Commissioner applied the correct legal standard. See 42 U.S.C. § 405(g) (setting out the standard of review for decisions on DIB claims); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for decisions on SSI claims).

The responsibility of weighing conflicts in the evidence on issues of credibility, and drawing inferences from the record, belongs to the Acting Commissioner.  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991).  The court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarleka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  The court must review the record "as a whole when determining whether substantial evidence support[s] the ALJ's findings."  West v. Berryhill, No. 17-1170 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017).

## FACTUAL BACKGROUND

The parties have submitted a Joint Statement of Material Facts (doc. no. 11) that contains a summary of the facts material to this case.

At his alleged onset date of disability (September 30, 2010), Wisell was 56 years old.  For the 15 years prior to the date he was last insured, Wisell worked as a carpenter and food selector.  His education is limited, and he has problems reading and doing basic math.

Wisell has lower back and left shoulder impairments that stem from a motor vehicle accident in 1977.  In February 2014, Wisell saw Dr. Peter Loeser for a consultative exam and

complained of pain in his left arm and shoulder.  Although Wisell told Dr. Loeser that the pain and weakness in his arm and shoulder had been consistent over the "past 5-6 years," Wisell conceded that Loeser was the first doctor he had seen for the pain.  Administrative Record ("Rec.") at 207.

On February 26, 2014, Dr. Natacha Sochat, a state agency physician, completed an assessment of Wisell's functional capacity and concluded he could perform a range of light work, which included a restriction for lifting up to 20 pounds occasionally.  Dr. Sochat reached her conclusions after reviewing Wisell's medical records and without examining Wisell.

Wisell began seeing Dr. Douglas Keene in December 2014.  Wisell complained of problems sleeping due to pain in his back and arm, which became worse at night.  Dr. Keene ordered an MRI and X-rays.  The February 2015 MRI showed degenerative disc disease throughout the lumbar spine with bone spurs in the upper region and arthritis in the lower region, and mild spinal stenosis "secondary to a bulging disc."  Dr. Keene also noted "extensive vascular calcification."  Rec. at 466.  X-rays of Wisell's left shoulder showed arthritis and evidence of an old fracture.

On March 30, 2015, during what was Wisell's fourth visit with Dr. Keene, Wisell discussed with Dr. Keene the results of

the MRI and X-rays. In a section of his treatment note entitled, "Discussion/Summary," Dr. Keene wrote: "Limit lifting to 20 lbs." Dr. Keene recommended Wisell follow up with a pain clinic and his primary care physician. Thereafter, Wisell saw a physical therapist and began taking pain medication. At the hearing, and in response to a direct question from the ALJ, Wisell testified that Dr. Keene instructed him "not to lift anything more than 20 pounds." Rec. at 571-72.

A state agency physician and orthopedic specialist, Dr. Anthony Francis, reviewed Wisell's medical records and in a written opinion dated October 8, 2015, concluded that Wisell could lift up to 20 pounds frequently and up to 50 pounds occasionally. The central dispute in this case centers on the ALJ's decision to adopt Dr. Francis's opinion in her RFC assessment without mentioning the 20 pound lifting limitation placed upon him by his treating physician, Dr. Keene.

**DISCUSSION**

The question for the ALJ is whether the claimant is disabled. The Social Security Act defines "disability" as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [lasting at least a year and is] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

4

42 U.S.C. § 423(d)(2)(A); see also id. at § 1382c(a)(3)(A)-(B). "Thus, 'disability' under [the Act] has a 'medical' part, concerning the nature and severity of a claimant's impairment, and a 'vocational' part, concerning the availability of suitable work." Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982).

The SSA regulations contain a five-step sequential process the ALJ must use in deciding whether a claimant is disabled under this statute. See 20 C.F.R. §§ 404.1520 & 416.920.[1] The first step requires a finding that claimant has not been working; the second requires a finding that the claimant has a severe impairment; the third inquires whether the impairment is listed in the Appendix 1 regulations,[2] and if it is not, then the ALJ must proceed to answer the fourth and fifth steps, which are "vocational tests." § 404.1520. The fourth requires that the ALJ calculate the claimant's "residual functional capacity"

---

[1] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

[2] If the impairment is listed, the analysis is over and claimant's application is granted.

("RFC"),[3] and determine that the impairment prevents claimant from performing past relevant work. The fifth requires that there be no other work in the national economy that claimant could perform. 20 C.F.R. § 416.920(a)(4).

The burden remains with the claimant at steps one through four. At step five, the burden shifts to the Acting Commissioner to show that there are jobs in the national economy that claimant can perform. West, 2017 WL 6499834, at *1; Goodermote, 690 F.2d at 6-7.

Here, Wisell claims that the ALJ erred in over-calculating his RFC and not addressing the lifting limitation prescribed by Dr. Keene, Wisell's treating physician. The Acting Commissioner disagrees and argues that Dr. Keene is not a treating physician, and that his lifting limitation was "vague and indefinite" because it did not contain any durational component. As such, the Acting Commissioner argues that the ALJ was not required to consider Dr. Keene's assessment of Wisell's exertional limitations.

I.   Treating Physician

The Acting Commissioner's first argument is that Dr. Keene is not a "treating physician" because he did not meet with

---

[3] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1519.

Wisell a sufficient number of times. The regulations define a "treating source" as one who provides a claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with claimant. 20 C.F.R. § 404.1527(a)(2). A physician who evaluates a claimant "only a few times" may qualify as a "treating [physician] if the nature and frequency of the treatment or evaluation is typical for [claimant's] condition." Id.

Wisell was a patient at the Cheshire Medical Center, where it appears he saw several different providers. Based on his medical record, however, Dr. Keene is the physician with whom Wisell had the most contact concerning the precise question in dispute in this case: the pain in his back and arm. Indeed, it was Dr. Keene who ordered the MRI and X-rays to determine if there was objective medical evidence of the pain Wisell described to him.

At Wisell's fourth visit, Dr. Keene instructed Wisell not to lift any more than 20 pounds. Dr. Keene's course of treatment included a total of four in-person visits, diagnostic X-rays and an MRI, physical tests of Wisell's mobility, and a recommendation for physical therapy and pain medication. As such, Dr. Keene treated Wisell for his back and arm pain within the meaning of a "treating physician" and the ALJ was

required to "give good reasons" for the weight accorded to Dr. Keene's opinion. § 404.1527(c)(2); see Pelletier v. Colvin, No. CV 14-30105-MGM, 2015 WL 13236724, at *4 (D. Mass. Sept. 11, 2015) ("Accordingly, remand is appropriate when the ALJ fails to indicate what weight, if any, was given to a treating source's opinion, and fails to give 'good reasons' in the notice of determination for such omission.").

## II. Durational Component

The Acting Commissioner argues that even if Dr. Keene is a treating physician, the ALJ's failure to address his assessment of Wisell's exertional limitations is harmless because the assessment does not contain any durational component. She notes that under the Social Security Act, a claimant is disabled only if he has an impairment "which has lasted or which can be expected to last for a continuous period of not less than 12 months." §§ 423(d)(1)(A) & 1382c(a)(3)(A). The Acting Commissioner argues that because Dr. Keene did not explain how long he expected Wisell's lifting limitation to last, the ALJ's failure to address Dr. Keene's opinion does not require remand.

A review of both Wisell's treatment records from Dr. Keene and other providers at the Cheshire Medical Center, as well as other medical opinion evidence in the record, could support an inference that the lifting limitation would have lasted 12

8

months.  Therefore, the court cannot conclude that the ALJ's error was harmless.

    A.    Cheshire Medical Center Medical Records

    Dr. Keene's opinion of Wisell's exertional limitations appears in a treatment note from an in-person appointment to discuss the results of Wisell's MRI and X-rays.  Rec. at 502.  As discussed above, that note is part of a larger set of medical records from Dr. Keene and other treatment providers at Cheshire Medical Center who saw Wisell for his back pain and arm pain, as well as a variety of other health issues, including skin cancer and hearing problems.

    Prior to instructing Wisell not to lift more than 20 pounds, Dr. Keene had examined Wisell on three occasions: December 8 and 18, 2014, and January 22, 2015.  Medical records for those previous visits memorialize and detail Dr. Keene's judgments about the nature and severity of Wisell's pain.  During his first visit with Dr. Keene (December 8, 2014), Wisell complains that he "has trouble sleeping, usually due to pain . . . [and] is having more pain in his back and arm at night . . . ."  Rec. at 494.  During his second visit (December 18), Wisell complains of "left shoulder pain," and Dr. Keene orders an X-ray of his left shoulder.  Dr. Keene notes that Wisell "has significantly limited range of motion."  Rec. at 481.

9

Again, on January 22, 2015, Wisell visits Dr. Keene complaining about shoulder and back pain. Rec. at 474. Dr. Keene notes that Wisell rated his low back pain at "8" on the "pain scale." Rec. at 472. Dr. Keene's treatment notes address Wisell's limited range of motion:

> He has tenderness over the low back and the lower lumbar region over the paraspirous musculature bilaterally. He is able to flex approximately 60° and external 5°. Lower extremities DTRs are 2+ of the patellar reflexes 1+ of the ankle refex bilaterally. Straight leg raise test is negative bilaterally.

Rec. at 471. Also in his treatment notes from that visit Dr. Keene writes: "He has chronic back and shoulder pain. He had X-rays of the left shoulder which showed [an] old clavicle fracture and significant degenerative changes in the glenohumeral joint with exophytic formation." Rec. at 470. Dr. Keene then ordered an MRI. Dr. Keene's diagnostic notes after he reviews the MRI state:

> Degenerative disc disease at all levels of lumbar spine with bone spurs upper and arthritis lower in the lumbar spine. Patient has a history of chronic low back pain. Spine clinic at Dartmouth if patient wishes. Transportation may be a problem that he needs assistance with.

Rec. at 466.

It is during Wisell's final visit with Dr. Keene, on March 30, 2015, that Dr. Keene instructs him not to lift anything greater than 20 pounds. The "Reason for Visit" (at the top of

10

the note) states: "follow up mri results."  Id.  Under "Topics Covered," the first entry is "low back pain."  Id.  Under "Discussion/Summary," the note states: "Limit lifting to 20 lbs.  Follow up in Dermatology and Pain Clinic.  Stop smoking.  Follow up with PCP in 3 months."  Id.  In a section of the note that records "Vitals," there is an entry on a chart for "pain scale" at "8" and for "pain location" at "back."  Id.

Thereafter, Wisell saw Dr. Mark A. Horton at Cheshire Medical Center who referred him for a lumbar evaluation and physical therapy.  See Rec. at 510-16.  The last medical record from Cheshire Medical Center is dated July 7, 2015, and indicates that Wisell saw David S. Segal, a physician's assistant, who prescribed pain medication for pain in Wisell's left shoulder that Wisell rated as an "8" or "8/10" on the pain scale.  Rec. at 517.

Wisell's medical records from Cheshire Medical Center show that he suffered from and sought treatment for back and arm pain over the course of several months.  These records support an inference that the lifting limitation imposed by Dr. Keene was more than merely a temporary restriction.

    B.    Dr. Sochat's Opinion

In addition, other opinion evidence in the record supports Dr. Keene's opinion and gives rise to the inference that the

11

lifting limitation was more than temporary.  Specifically, Dr. Sochat, a state agency physician, reviewed Wisell's medical records in February 2014 (before the MRI and X-rays existed and more than a year before Dr. Keene gave his lifting limitation) and concluded—similarly to Dr. Keene—that Wisell had an exertional limitation for lifting up to 20 pounds occasionally.  The ALJ states that she gave Dr. Sochat's opinion little weight "as she did not examine the claimant nor did she review all of the evidence [of] record."  Although the ALJ's decision to give Dr. Sochat's opinion little weight may have been reasonable, Dr. Keene both examined Wisell multiple times and ordered the X-rays and MRI, the critical diagnostic evidence in Wisell's medical record.  Therefore, particularly in light of Dr. Sochat's similar opinion from more than a year earlier, the ALJ should have, but did not, address Dr. Keene's opinion.

III. Summary

In light of Dr. Keene's status as a treating physician, the ALJ was obligated to address his opinion as to the lifting limitation and give good reasons for discounting that opinion.  In light of the other medical evidence in the record, the court cannot conclude that the ALJ's failure to do so was harmless.

**CONCLUSION**

For these reasons, the Acting Commissioner's motion for an order affirming her decision, document no. 10, is denied, and Wisell's motion to reverse that decision, document no. 8, is granted. The case is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 3, 2018

cc: Counsel of Record